IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 08-08-GMS |
| | : | |
| THOMAS J. SMITH, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S MOTION TO SUPPRESS**
**PHYSICAL EVIDENCE AND STATEMENTS**

Defendant, Thomas Smith, by and through his undersigned counsel, Keir Bradford, hereby moves this Court, pursuant to Federal Rule of Criminal Procedure 12(b)(3) and the Fourth Amendment of the United States Constitution, for an Order suppressing the Government's use of any and all evidence illegally seized by law enforcement officials on or about January 8, 2008. In support of this Motion, Mr. Smith avers as follows:[1]

1. On January 8, 2008 at 3:13 A.M., Officers Rinehart and Muziol, of the Wilmington Police Department, were patrolling in the 600 block of North Madison Street in a marked patrol vehicle. While traveling northbound on Madison Street, the officers observed a black male, later identified as Thomas Smith, turn southbound on North Madison. Mr. Smith was wearing a black sweatshirt, blue jeans and tan boots, and was walking with his hands in his pockets.

2. Based upon the above-cited observations, the officers decided to stop Mr. Smith and

---

[1] The facts contained in paragraphs 1-7 of this motion were taken from Discovery provided to the defense by the government, as well as from independent defense sources.

direct that he produce identification.

3. The officers drove their patrol vehicle to Mr. Smith and made contact with him. Officer Muziol questioned Mr. Smith through the patrol vehicle driver's side window. Officer Muziol asked Mr. Smith if he had any identification on him, to which Mr. Smith stated that he did not. Officer Muziol then asked Mr. Smith where he was going, to which Mr. Smith replied, "I'm heading over to my girl's house."

4. At this point, Officer Muziol told Mr. Smith to place his hands on the hood of the patrol vehicle so that Officer Muziol could detain Mr. Smith for identification purposes. Mr. Smith immediately fled, and Officer Muziol gave chase of Mr. Smith in the patrol vehicle. When Mr. Smith attempted to scale a fence, Officer Rinehart exited the patrol vehicle and continued the chase on foot. Mr. Smith was unable to scale the fence, and continued running. While Mr. Smith was running, Officer Rinehart allegedly observed a dark object fall out of the Mr. Smith's right pant leg and onto the sidewalk.

5. Officer Rinehart continued chasing Mr. Smith and verbally commanding Mr. Smith to stop. Mr. Smith soon surrendered by dropping to the ground. Officer Rinehart approached Mr. Smith and after using physical force on him, was able to place him in custody.

6. After detaining Mr. Smith, Officer Rinehart recovered the object, a black semi-automatic handgun, that allegedly fell from Mr. Smith while he was fleeing. Mr. Smith was then transported to the police station, and after admitting that he was in possession of cocaine, was given his Miranda warnings. After receiving his warnings, Mr. Smith ceased his discussion with the Officers. At this time, Officer Rinehart conducted a check of Mr. Smith through DelJis, which revealed that Mr. Smith had outstanding capias warrants and is a convicted felon.

7.   On January 22, 2008, Mr. Smith was indicted for possession of cocaine base, in violation of 21 U.S.C. § 844(a) and being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

8.   The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." See U.S. CONST. Amend. IV. There is a presumptive requirement that searches and seizures be carried out pursuant to a warrant. See Katz v. United States, 389 U.S. 347, 357 ("[S]earches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment - subject only to a few specifically established and well-delineated exceptions.") (internal citations omitted).

9.   One such exception was created in Terry v. Ohio, 392 U.S. 1, 21 (1968), in which the United States Supreme Court held that an officer may conduct a brief, investigatory stop if the officer is "able to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant that intrusion." The Court also stated that these Terry stops must be "justified at [their] inception." Id. at 20. In determining whether the officers had reasonable suspicion to conduct a Terry stop, the Court will consider the totality of the circumstances. Illinois v. Wardlow, 528 U.S. 119, 136 (2000). See e.g., Brown v. Texas, 443 U.S. 47, 53 (1979) (holding that an officer may not detain a suspect and require him to produce identification absent reasonable suspicion that the suspect is involved in criminal activity); Brown, 443 U.S. at 52 (stating the sole fact that the suspect was present in a high crime area was insufficient to establish reasonable suspicion that the suspect was involved in criminal activity); Wardlow, 528 U.S. at 124 (holding that unprovoked flight merely upon seeing police, in addition to presence in a high crime area, was sufficient to

establish reasonable suspicion to believe the suspect was engaged in criminal activity).   1 0 .

In this case, there was not reasonable suspicion to believe that Mr. Smith was involved in criminal activity. Considering the totality of the circumstances, the sole evidence before the officers that prompted them to stop Mr. Smith was the fact that he was walking down the street in a high crime area with his hands in his pockets. The officers were not responding to a crime scene when they observed Mr. Smith nor did they observe any suspicious activity by him to suggest that he was involved in any criminal activity. Unlike Wardlow, Mr. Smith's flight was not unprovoked because he did not flee immediately upon seeing the Officers. Rather, Mr. Smith stopped to answer a few questions by Officer Muziol. It was not until that officer told Mr. Smith that he was going to be detained so they could determine his identity that Mr. Smith fled.

11.    Furthermore, as Terry stated, the search must be justified at its inception, therefore, Mr. Smith's subsequent flight could not provide reasonable suspicion for the initial stop. In this case, at its inception, the Officers merely observed an individual walking down the street at 3:13 a.m. on a January morning with his hands in his pockets. A rational inference from those facts would be that Mr. Smith had his hands in his pockets because it was cold outside, not that he was concealing a weapon or carrying narcotics. Pursuant to Brown, the officers could not stop Mr. Smith and request identification because there was not reasonable suspicion to believe he was involved in criminal activity, and his mere presence in a high crime area alone, is insufficient to establish such suspicion.

12.    In conclusion, based on the lack of reasonable suspicion to suspect that Mr. Smith was involved in any criminal activity, the officer's stop of him was a violation of the Fourth Amendment, and consequently, all evidence, including the firearm allegedly dropped by Mr. Smith and the

statements he made at the police station, must be suppressed in accordance with the "Fruit of the Poisonous Tree Doctrine" expressed in Wong Sun v. United States, 371 U.S. 471 (1963).

13. Mr. Smith also submits that any alleged statements made subsequent to his arrest should be suppressed pursuant to the Fifth Amendment and Miranda v. Arizona, 384 U.S. 436, 444 (1966) (stating that a suspect subjected to custodial interrogation must be advised of his rights prior to making a statement).

14. Mr. Smith reserves the right to file a Memorandum of Law in support of his Motion to Suppress Physical Evidence and Statements after the completion of a hearing on this matter.

**WHEREFORE**, Mr. Smith respectfully requests that this Court conduct a hearing to further develop the facts related to this motion and enter an Order suppressing the government's use of any and all evidence illegally obtained by law enforcement officials on or about January 8, 2008.

Respectfully submitted,

/s/ *Keir Bradford*
Keir Bradford, Esquire
Assistant Federal Public Defender
704 King Street, Suite 110
Wilmington, Delaware 19801
(302) 573-6010
ecf_de@msn.com

Attorney for Defendant Thomas J. Smith

Dated: March 14, 2008

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 08-08-GMS |
| | : | |
| THOMAS J. SMITH, | : | |
| | : | |
| Defendant. | : | |

**ORDER**

The Court having considered Defendant Smith's Motion to Suppress Physical Evidence and Statements and good cause having been shown therefore;

IT IS HEREBY ORDERED this _____ day of _____, 2008, that any statements made by Mr. Smith on or about January 8, 2008, shall be suppressed.

 

_____
The Honorable Gregory M. Sleet
Chief Judge, United States District Court