IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Criminal Action No. 08-08-GMS |
| THOMAS J. SMITH, | : | |
| Defendant. | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS**

Defendant, Thomas Smith, by and through his undersigned counsel, Keir Bradford, Assistant Federal Public Defender for the District of Delaware, respectfully submits this Memorandum of Law in support of his Motion to Suppress Physical Evidence and Statements. For the reasons set forth below, Mr. Smith seeks to exclude the Government's admission, at trial, of any and all evidence obtained as the result of his illegal seizure and arrest on or about January 8, 2008, and all statements made during, or subsequent to, the illegal seizure and arrest.

**I. FACTUAL BACKGROUND**

    **A.    May 29, 2008 Evidentiary Hearing**

At the Evidentiary Hearing, the government presented: (1) Officer Michael Rinehart.

        **1.  Michael Rinehart's Testimony**

Officer Rinehart testified that on January 8, 2008, from 11:00 p.m until 8:00 a.m, he was assigned to the 16th District, which encompasses the 600 block of Madison Street, Wilmington, Delaware. (Tr. 3-4). Officer Rinehart stated that he and his partner, Officer Muziol were dressed

PDF created with pdfFactory Pro trial version www.pdffactory.com

in full [police] uniform, with guns in their holsters, and were driving in a fully marked Wilmington Police vehicle. (Tr. 4-5, 29).

Officer Rinehart stated that he stopped Mr. Smith in the area of the 600 block of Monroe and Madison Streets at 3:13 a.m. (Tr. 6, 23). Officer Rinehart testified that Officer Muziol attempted to stop Mr. Smith, because [he and Officer Muziol] had been instructed by [their] Lieutenant....to stop and identify anyone that was out walking in that area. (Tr. 8). Officer Rinehart testified that Mr. Smith did stop at the request of the officers and remained stopped until the officer's questioning seized. (Tr. 24). Officer Rinehart testified that he and his partner observed Mr. Smith walking with his hands in his pockets at about 3:15 a.m. in January. (Tr. 9, 23). Officer Rinehart stated that he did not get a radio call from any resident in the area complaining of a person matching Mr. Smith's description. (Tr. 21).

Officer Rinehart testified that he stopped his patrol car one foot from Mr. Smith. (Tr. 25) Officer Muziol asked Mr. Smith "can I talk to you for a second" to which Mr. Smith stopped and turned to the patrol car. (Tr. 9). Officer Rinehart stated that Officer Muziol asked the Mr. Smith if he had any identification, to which the Mr. Smith stated no. (Id.). Officer Muziol then asked Mr. Smith where he was headed to which Mr. Smith responded to [my] girl's house. (Id.). Officer Rinehart testified that Officer Muziol then asked, "where is your girl's house" to which Mr. Smith responded, I am heading to my girl's house. (Tr. 10). Officer Rinehart testified that Officer Muziol repeated the question, "where is your girl's house" numerous times to Mr. Smith, although Mr. Smith had previously responded to the officer's question. Id.

Officer Rinehart testified that during the encounter he did not notice anything that would cause him to believe Mr. Smith had a weapon. (Tr. 25). Officer Rinehart testified that he told Officer

2

PDF created with pdfFactory Pro trial version www.pdffactory.com

Muziol to tell [Mr. Smith] to put his hands on the hood. (Tr. 11).

Officer Rinehart testified that Mr. Smith took two steps toward the car, which was only one foot away from him, after he was told to put his hands on the hood. (Tr. 25, 28). Officer Rinehart testified that after Mr. Smith took steps toward the hood, both officers began to open their doors, and Mr. Smith turned around and started running. Id.. Officer Rinehart testified that he and his partner gave chase, and Mr. Smith attempted to scale a chain link fence. (Tr. 13). Officer Rinehart testified that Mr. Smith failed his attempt to scale the fence, and once Mr. Smith came down from the fence Officer Rinehart saw what he believed to be a firearm fall. (Tr. 14). Officer Rinehart testified that he did not see Mr. Smith physically take his hands and throw or discard anything. (Tr. 36-37).

Officer Rinehart testified that Mr. Smith continued running, and after Officer Rinehart's third verbal command, Mr. Smith voluntarily submitted to the officers request and laid down on the ground. (Tr. 16). Officer Rinehart testified that after Mr. Smith laid down on the ground, the officer gave him a "stun blow" to the back of his head because Mr. Smith would not allow the officers to handcuff him after he voluntarily submitted. (Tr. 37).

## II.    ARGUMENT

Thomas Smith respectfully asserts that his motion for suppression of all evidence obtained as a result of his unlawful seizure on January 8, 2008, be granted. The officers seized Mr. Smith without reasonable suspicion that criminal activity was afoot. The record establishes that Mr. Smith was alone on a street with his hands in his pockets on a cold January night and was seized by police officers for no reason other than his hands being in his pockets. As such, all evidence stemming from Mr. Smith's unlawful seizure must be suppressed. See Wong Sun v. United States, 371 U.S. 471

PDF created with pdfFactory Pro trial version www.pdffactory.com

(1963).

### A.  Mr. Smith was Seized Prior to Fleeing

The Fourth Amendment protects "the right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." See U.S. CONST. Amend. IV. The Supreme Court has stated: a seizure occurs when there is either (a) "a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful" or (b) submission to "a show of authority." California v. Hodari D. 499 U.S. 621, 626 (1991). The test for existence of a show of authority is an objective one: whether, looking at the totality of the circumstances, the police conduct would... communicate to a reasonable person that he was not at liberty to ignore the police conduct and go about his business. Florida v. Bostwick 501 U.S. 429 (1991)((See also, United States v. Brown, 448 F.3d 239 (3d Cir. 2006) (citing: United States v. Mendenhall 446 U.S. 554 (1980)(suggesting that a reasonable person would not feel free to leave when he is confronted with the "threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, or the use of language or tone of voice indicating that compliance with the officers request might be compelled)).  It also requires the suspect actually submit to the show of authority. United States v. Coggins, 986 F.2d 651, 654 (3d. Cir 1993). (citations omitted).

In Johnson v. Campbell, 332 F.3d 199, 206 (3d Cir. 2003). the Third Circuit held that Johnson was seized when the officer repeatedly asked Mr. Johnson to roll down his window, because the officer made it clear that Mr. Johnson was not free to ignore him and would not be left alone until he complied. Id. In the present case, two fully uniformed police officers with guns in their holsters in a fully marked patrol vehicle, approached Mr. Smith in the middle of the night and stopped

4

approximately one foot away from him. During the encounter, Mr. Smith was the only person in the vicinity.[1] The officers proceeded to ask Mr. Smith several questions, to which Mr. Smith responded to all of the officer's questions while remaining stopped. After Mr. Smith had answered all of Officer Muziol's questions, Officer Muziol continued to ask "where's your girl's house" repeatedly, although Mr. Smith had already provided Officer Muziol with a response. Because of the repeated questioning, and the nature of the interrogation, Mr. Smith asserts that he was seized at the moment the officer's began repeating their questions that Mr. Smith had previously answered. At the latest, Mr. Smith was seized when he complied with Officer Muziol's orders, and took steps toward the police vehicle that was only one foot away from him.

In Coggins, the Third Circuit held that the defendant was seized when he complied with an officers request to sit down, although he soon after fled. Id. at 654. The Coggins court reasoned the seizure occurred when the defendant "initially yielded to the officers authority" even though he fled soon after. Id.

Similar to Coggins, Mr. Smith initially yielded to the officer's authority, at first by remaining stopped and answering all of Officer Muziol's questions. Mr. Smith yielded to the officers authority for a second time, by taking steps toward the hood of the patrol car in compliance with Officer Muziol's demand that Mr. Smith come over to the vehicle. The combination of the repeated

---

[1] The government relies on United States v. Thame 846 F.2d 200 (3d Cir. 1988) in arguing that Mr. Smith was not seized prior to Officer Muziol ordering Mr. Smith to place his hands on the patrol car. (Govt. brief at ¶ 9). Thame is factually distinct from the case at bar. Id. In Thame, the court held that a police encounter that took place in Philadelphia's 30th Street Station did not amount to a coercive situation, because of the public nature of the police questioning. Id. In the present case, Police approached Mr. Smith in the middle of the night and while he was the only person in the vicinity. Further, the officer's repeated questioning would signal to a reasonable person that he was not allowed to leave.

5

PDF created with pdfFactory Pro trial version www.pdffactory.com

questioning by Officer Muziol, Mr. Smith stated several times that he was on his way to his girlfriend's house, Officer Muziol's order for Mr. Smith to put his hands on the patrol vehicle's hood and Mr. Smith's initial compliance is sufficient to establish that Mr. Smith yielded to the officer's authority. It was only after Mr. Smith yielded to the officer's authority that he attempted to flee.

In United States v. Brown 448 F.3d 239, (3d Cir. 2006), the Third Circuit held that the defendant's initial submission was not undercut by an subsequent attempt to flee. Id. The Brown court concluded that the defendant was seized for purposes of the Fourth Amendment when he turned around to face the police car and placed (or moving to place) his hands on the vehicle in response to an officers demand, even though the defendant soon after struggled with the officer. Id. at 246. The Brown court found it immaterial whether the defendant actually placed his hands on the vehicle or if he simply made a movement as to put his hands on the vehicle. Id at 239.

Analogous to the defendant in Brown, whom the Third Circuit found was seized when he began moving to place his hands on the vehicle in response to an officers demand, Mr. Smith took steps toward the police vehicle in response to Officer Muziol's demand for him to do so. Mr. Smith complied with Officer Muziol's demand that he come over to the patrol car and place his hands on the hood, by taking steps toward the hood of the officer's patrol car that was only one foot away from him.

The Government argues that the case at bar is analogous to United States v. Valentine 232 F.3d 350 (3d Cir. 2000). The defendant saw officers approach and immediately began to walk away from the officers. Id. One of the arresting officers ordered Valentine to stop, to which Valentine replied "Who me" and immediately charged the officers. Id. at 353.

PDF created with pdfFactory Pro trial version www.pdffactory.com

In the present case, Mr. Smith initially remained stopped and answered all of the officer's questions. Further, once Mr. Smith was ordered to put his hands on the hood of the patrol car, he took steps toward the car, in compliance with the officer's orders. Unlike Valentine, in which the defendant immediately charged the officers in response to their orders, Mr. Smith yielded to the officer's authority by answering all of Officer Muziol's questions, and then by taking steps toward the patrol car in response to the officer's demands. As in both Brown and Coggins, although Mr. Smith eventually fled, he was seized at the moment he initially yielded to police authority.

### B. The Police Officers did not have Reasonable Suspicion that Criminal Activity was Afoot when The Officers Seized Mr. Smith.

A mere hunch or inchoate and unparticularized suspicion cannot justify a stop and frisk under Terry. United States v. Brown, 159 F.3d 147, 159 (3d Cir. 1998). Instead, the officer must have reasonable articulable suspicion that criminal activity is afoot. See Illinois v. Wardlow, 528 U.S. 119 (2000). To justify a Terry stop, the officer's suspicion must be based upon specific and articulable facts which, taken together with all rational inferences from those facts, reasonably suggest that a suspect has been involved in criminal activity. See United States v. McCray, 148 F. Supp. 2d 379 (D. Del. 2001)(citing: Terry v. Ohio, 392 U.S. 1, 30 (1968)). Further, if the seizure occurs before an attempted escape, [the attempted escape] plays no role in the reasonable suspicion analysis. See Johnson v. Campbell, 332 F.3d 199, 210 (3d. Cir. 2003)

In the present case, the officer's justified their stop of Mr. Smith by asserting only that Mr. Smith was outside with his hands in his pockets on a January night, and that he was located in a high crime area, which also serves as a residential neighborhood.

In McCray, this Court held that an area's reputation for narcotics activity and the late hour

7

PDF created with pdfFactory Pro trial version www.pdffactory.com

of the evening are not objective factors that contribute to reasonable suspicion because although the area was a high crime area, it was also a residential neighborhood. Id at 386-387. This Court in McCray reasoned: although people who live in communities torn by crime are entitled to be free from fear of victimization and have police investigate before crimes occur, it would be even more unfortunate if people who live in neighborhoods afflicted with crime are made to live in fear of victimization by those sworn to protect them from crime as well as criminals. Id. at 391 (citing: United States v. Valentine, 232 F.3d 350 (3d Cir. 2000)).

In the present case, the only facts the officers articulate to establish reasonable suspicion is that: Mr. Smith was located in a high crime residential neighborhood; he had his hands in his pockets in January; and that Mr. Smith "appeared nervous", although Mr. Smith remained stopped and responded to all of the officer's questions.[2] At most, these factors establish an inchoate and unparticularized suspicion that the Supreme Court has found insufficient to support a finding of reasonable suspicion.

### C. **Mr. Smith is Entitled to Fourth Amendment Protection Concerning the Firearm As the Firearm Fell, Rather than it being Abandoned.**

Mr. Smith did not abandon his property, thus the firearm seized as a result of his unlawful seizure must be suppressed. Although a person has a privacy interest in the contents of his personal

---

[2]In the Government's brief, it states that one of the factors leading to reasonable suspicion was that Mr. Smith was carrying a firearm. However, Officer Rinehart testified that he did not notice anything during the encounter with Mr. Smith, that would cause him to believe Mr. Smith had a weapon.

PDF created with pdfFactory Pro trial version www.pdffactory.com

[property], he forfeits that interest when he abandons his property. United States v. Fulani, 368 F.3d 351 (3d Cir 2004) (quoting: Abel v. United States, 362 U.S. 217 (1960)). Proof of intent to abandon property must be established by clear and unequivocal evidence. Fulani, 368 F.3d at 354 (citing: United States v. Moody, 485 F.2d 531 (3d Cir. 1973)).

In the present case, Officer Rinehart stated repeatedly that he observed the firearm fall from Mr. Smith's waist area. Officer Rinehart also stated that he did not see the Mr. Smith throw or discard anything. It is clear from the record that the government did not meet its burden in establishing that Mr. Smith abandoned the firearm. Therefore, Mr. Smith has a privacy interest in the firearm that was seized.

PDF created with pdfFactory Pro trial version www.pdffactory.com

**III** <u>**CONCLUSION**</u>

Mr. Smith respectfully asserts that his motion to suppress all evidence obtained from the unlawful seizure be granted. Mr. Smith was seized prior to fleeing, when he submitted to the officer's authority by obeying their orders. The officers did not have reasonable suspicion to seize Mr. Smith prior to his attempted flight. Finally, Mr. Smith did not abandon the firearm that fell from his waist. Therefore, all evidence that was seized as a result of an the unlawful seizure of Mr. Smith on January 8, 2008 must be suppressed. <u>See</u> <u>Wong-Sun v. United States</u>, 371 U.S. 407 (1963).

**WHEREFORE**, Thomas Smith respectfully requests the Court to grant his motion.

          Respectfully submitted,

          /s/
          Keir Bradford, Esquire
          Assistant Federal Public Defender

          Attorney for Defendant Thomas J. Smith

Federal Public Defender
One Customs House
704 King Street, Suite 110
Wilmington, DE 19801
(302) 573-6010
ecf_de@msn.com

Dated: June 27, 2008

PDF created with pdfFactory Pro trial version www.pdffactory.com